Marian F. Harrison
US Bankruptcy Judge

Dated: 11/27/2023

# IN THE UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| IN RE: | ) |
| | ) CASE NO. 223-03136 |
| COMPLETE COMPANIES INC., | ) |
| | ) JUDGE MARIAN F. HARRISON |
| Debtor. | ) |
| | ) CHAPTER 11 |
| | ) SUBCHAPTER V |
| | ) |

___

## MEMORANDUM OPINION
___

This matter is before the Court on the joint motion filed by the debtor and Summit Tractors, LLC ("Summit") to determine the validity and extent of the debtor's liens on certain personal property. A hearing was held on November 9, 2023, at which the parties presented proof. For the following reasons, which represent the Court's findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052, and made applicable by Federal Rule of Bankruptcy Procedure 9014(c), the Court finds that the debtor does not have a valid worker's lien.

## BACKGROUND

On August 8, 2022, Summit entered into a General Service Agreement ("Agreement") drawn up by Joshua Garfinkle ("Garfinkle"), the debtor's principal. Pursuant to the Agreement, the debtor would provide the following defined "Services" for Summit: "Assembly, Shipping, Preventative Maintenance & Repairs on Compact Tractors and Implements." These Services also included "any other tasks which the Parties *may* agree on."

As compensation under the Agreement, the debtor was entitled to $400 per assembled tractor and $225 per tractor delivered. Any compensation for "Warranty, Recall and Other work as may be required from time to time" was to be covered by an addendum which was never signed. Regarding the reimbursement of expenses, the debtor was to be "reimbursed from time to time for reasonable and necessary expenses incurred . . . in connection with providing the Services." However, "[a]ll expenses must be pre-approved by [Summit]." Finally, the Agreement provided that "[a]ny amendment or modification of this Agreement or additional obligation assumed by either Party in connection with this Agreement will only be binding if evidenced in writing signed by each Party or an authorized representative of each Party."

In February 2023, Summit experienced some billing problems and was not paying invoices in a timely matter. According to emails between the parties, Summit had some internal problems that caused some invoices to be paid late. However, Summit responded

with proof of payment for invoice numbers 181518, 181529, 181526, 181528, 181517. The debtor did not indicate any other fees remained unpaid until March 2023, when the debtor started making demands for payment of over $1,000,000, a number substantially higher than any of the invoices sent to and paid by Summit. At this time, Summit advanced funds for future work to be performed as a way to salvage the Agreement, which was not successful. On March 21, 2023, the debtor served Summit with an "Affidavit Lien," asserting a worker's lien in the amount of $732,000, with no supporting documentation. By the time Summit terminated the contract on March 27, 2023, the relationship had significantly deteriorated, and multiple legal battles as well as police reports followed.

On March 29, 2023, the District Court of Kaufman County, Texas (the "Texas State Court") entered a temporary restraining order against the debtor and Garfinkle forbidding them from removing the inventory held at a leased warehouse ("Texas Warehouse") in Terrell, Texas. The Court also set a hearing on Summit's application for temporary and permanent injunctive relief for April 12, 2023. After the April 12, 2023, hearing, the Texas State Court entered a temporary injunctive order against the debtor and Garfinkle on April 21, 2023. The temporary injunctive order required the debtor and Garfinkle to return some of the property to Summit. The remaining property was to stay at the debtor's leased premises until a final determination could be made. The temporary injunctive order specifically required that the debtor and Garfinkle "shall not touch, move, assemble, destroy, damage, encumber or otherwise dispose of the above-referenced property kept on

3

the Premises until further Order of this Court, agreement of the parties, or adjudication of the merits."

Based on allegations that the debtor was moving and potentially selling the tractors in the Texas Warehouse, Summit filed a motion for contempt in the Texas State Court. On July 7, 2023, the Texas State Court held a hearing where the parties were again ordered to refrain from removing any of inventory held at the Texas Warehouse. The hearing was continued to July 19, 2023, and eventually continued to August 30, 2023. However, matters in the Texas State Court were stayed when the debtor filed for bankruptcy relief in this Court on August 29, 2023.[1]

In the present case, the pleadings filed and the exhibits admitted into evidence are voluminous, including multiple transcripts from previous hearings in Texas and Tennessee and 100 invoices the debtor claims are owing. In particular, the invoices admitted as Exhibit 1011, cover a wide range of charges, a significant amount of which is for storage. Other costs include assembly, delivery, crate disposal, parts, repairs, breach of contract, and other miscellaneous charges. Of these, the Court has narrowed down the potentially relevant charges to 58 invoices.[2]

---

1 Garfinkle and his spouse filed a Chapter 13 petition (Case No. 222-01643) on May 24, 2022. The case was dismissed on July 14, 2023, for failure to fund the plan.

2 Some of the invoices were eliminated from consideration because charges for storage and repairs were lumped together rather than itemized, and the Court is unable to speculate as to the amounts related directly to repairs. In addition, several of these invoices were for work done in April 2023 when the temporary restraining order against the debtor and Garfinkel was already in

4

Of these remaining invoices, 35 are dated April 12, 2023, even though the alleged work was done between December 3, 2022, and February 7, 2023. Another four invoices were dated February and March, but the charges for repairs were added on April 12, 2023. The debtor did not provide any reasonable explanation for the delay in submitting these additional invoices and charges until after the parties were in litigation. Five of the remaining invoices are for "Warranty Repair Services." Paragraph 10 of the Agreement specifically states: "per addendum to be added at future time for Warranty, Recall and Other work as may be required from time to time." No addendum was introduced into evidence, so these costs were clearly outside the scope of the Agreement. The final 14 invoices are for repairs allegedly performed between February 23, 2023, and March 25, 2023. Garfinkle testified that Summit approved these repairs through texts and emails. However, nothing in the emails admitted into evidence reflect that Summit preapproved any repairs. Garfinkle further testified that Summit had previously been paying for additional repairs and expenses, but no documentation was presented in support of this statement.

Pursuant to the Texas State Court's order, the parties conducted an inventory at the Texas Warehouse. The list, which includes serial numbers, was stipulated into evidence as exhibit 1001. When asked whether he could match the serial numbers to the invoices in question, Garfinkle testified that as the Chief Executive Officer of the company, it was not

---

place to preserve the status quo. These invoices were dated April 12, 2023, the day the Texas State Court held the hearing on Summit's request for temporary and permanent injunctive relief.

his job to go through each invoice to match the serial numbers from the inventory. However, he could say that all of the invoices have a serial number attached.

Doug Rehor, Summit's Chief Executive Officer, testified on behalf of Summit. He stated that all of the invoices in exhibit 1011 were only provided after Summit's counsel sent a "cease and desist" letter to the debtor. He further testified that none of the repair charges in these invoices were preapproved by Summit. The final witness was Rodney Taylor ("Taylor"), the Chief Financial Officer for Summit.[3] When the debtor presented the additional invoices in April, Taylor conducted an internal accounting to reconcile these invoices with Summit's records. Based on his review of the additional invoices and the terms of the Agreement, Taylor concluded that all legitimate invoices had been paid in full prior to termination.

## DISCUSSION

The debtor alleges that it has a worker's lien on all the inventory located at the Texas Warehouse. As the personal property is located in Texas, the laws of Texas apply. Under Texas law, a worker who by labor repairs an article, including a vehicle, motorboat, vessel, or outboard motor, may retain possession of the article until:

(1) the amount due under the contract for the repairs is paid; or

(2) if no amount is specified by contract, the reasonable and usual compensation is paid.

---

3 The debtor objected to exhibit 2003, Taylor's declaration. The Court tentatively admitted this exhibit into evidence, and the debtor did not renew its objection.

TEX. PROP. CODE ANN. § 70.001(a). *See also **Chase Manhattan Bank USA, N.A. v. Daimler Motors, Inc.***, No. 05-01-01904-CV, 2002 WL 31513404, *2 (Tx. App. Nov. 13, 2002).

First, a worker's lien requires there be a contract for the repair work done. Here, the parties had a contract to provide the following services: "Assembly, Shipping, Preventative Maintenance & Repair." The second requirement for a worker's lien is that repair work was done. "The concept of 'repair' with regard to a vehicle connotes something tangible, like removing dents or fixing parts." ***Amer. Mfrs. Mut. Ins. Co. v. Schaefer***, 124 S.W.3d 154, 158-59 (Tex. 2003) (citation omitted) ("defining 'repair' as 'to mend, remedy, restore, renovate; to restore to a sound or good state after decay, injury, dilapidation or partial destruction.'"). As such, charges for storage, assembly, transportation, and other fees are not covered by a worker's lien. For this reason, the Court has limited its review to the remaining 14 invoices[4] which appear to include repairs.

The third requirement for a worker's lien is that the amount due under the contract for the repairs has not been paid or, if no amount is specified by contract, the reasonable and usual compensation has not been paid. The parties' Agreement specifically limited compensation to assembly and shipping. Any other reimbursed expenses required

---

[4] These invoices include Nos. 181608, 181612, 18613, 181614, 181809, 181810, 181679, 181680, 181681, 181682, 181683, 181684, 181685, and 181687.

7

Case 2:23-bk-03136   Doc 54   Filed 11/27/23   Entered 11/27/23 12:12:37   Desc Main
Document    Page 7 of 9

Summit's preapproval, and the debtor did not show where Summit had ever paid for any additional expenses as part of the debtor's usual compensation.[5]

Based on the terms of the Agreement, the debtor was also required to show that the repairs were preapproved by Summit. A review of the invoices reflects that some included language such as "required by Summit," "approved Jake," or "awaiting approval on final repairs." In fact, before these invoices were presented to Summit in April 2023, there is nothing in the proof to suggest that Summit had preapproved any repairs or that the debtor had previously requested payment for any repairs. The only definitive proof that Summit preapproved repair work is the testimony of Garfinkle. The Court did not find Garfinkle's testimony to be credible.

Moreover, even if you accept the debtor's argument that preapproval was not required for repairs under the Agreement, the debtor failed to show that invoices showing repairs reflected the reasonable and usual compensation for such work. There was no credible proof that Summit had previously paid the debtor for repair work or even what the reasonable and usual compensation is for similar repairs in the area. Without this proof, the Court is left to speculate, which it declines to do.

---

5 To the extent there is any ambiguity as to the meaning of this language, such must be interpreted against the debtor as it was drafted by Garfinkle and his wife. ***See, e.g., Gonzalez v. Mission Am. Ins. Co.,*** 795 S.W.2d 734, 737 (Tex. 1990) (contractual ambiguity requires construction "against the party who drafted it since the drafter is responsible for the language used").

Finally, Summit asserts the debtor must show that the serial numbers on the tractors in its possession, as stated on the inventory sheet, match those listed on the unpaid invoices. Because the debtor has failed to show that any of the repairs were preapproved by Summit as required by the Agreement, the Court does not need to decide this issue or perform the tedious task of trying to match the serial numbers on the inventory sheet with those listed on the invoices.

## CONCLUSION

For the reasons stated, the Court finds that the debtor does not have any lien rights in the inventory currently held at the Texas Warehouse and that any purported lien must be released.

An appropriate order will enter.

**This Memorandum Opinion was signed and entered electronically as indicated at the top of the first page.**

This Order has been electronically signed. The Judge's signature and Court's seal appear at the top of the first page.
United States Bankruptcy Court.